UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATTHEW G. SILVA,

                Plaintiff,

v.

DANIEL ANDEMARIAM, *et al.*,

                Defendants.

Case No. C13-1182-JLR-BAT

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action brought under 42 U.S.C. § 1983. Plaintiff Matthew Silva is currently under the jurisdiction of the Washington Department of Corrections ("DOC") serving a term of community custody. He alleges in this action that the defendants violated his right to due process when they incarcerated him for nineteen days based on a hearing at which no evidence of guilt was presented. Plaintiff identifies DOC Community Corrections Officer Daniel Andemariam and DOC Hearing Officer Robert Zarate as defendants in this action. Plaintiff seeks damages and injunctive relief.

Defendants have filed a motion for summary judgment seeking dismissal of plaintiff's claims. Plaintiff has filed a response to defendants' motion and a cross-motion for summary

REPORT AND RECOMMENDATION - 1

judgment. Defendants have filed a response to plaintiff's cross-motion for summary judgment. The Court, having reviewed plaintiff's complaint, the parties' cross-motions for summary judgment, and all related briefing, concludes that defendants' motion for summary judgment should be granted, plaintiff's cross-motion for summary judgment should be denied, and plaintiff's complaint and this action should be dismissed with prejudice.

## BACKGROUND

Plaintiff was convicted in February 2005 on a charge of robbery in the first degree. (*See* Dkt. 9, Ex. 1, Attach. B.) He was thereafter sentenced to a term of 150 months confinement and to a term of 18 to 36 months on community custody. (*Id*.) Plaintiff was released from prison on February 27, 2013, and he reported to his assigned community corrections officer ("CCO"), John Fenton, on February 28, 2013. (*See id*., Ex. 1 at 2.) On that date, plaintiff was advised of the conditions of his supervision and signed a copy of those conditions thereby indicating his agreement to comply with them. (*See id*., Ex. 1 at 2 and Attach. B.)

On March 19, 2013, plaintiff admitted to CCO Fenton that he had ingested crack cocaine and plaintiff's use of cocaine was confirmed by urinalysis ("UA"). (*Id*., Ex. 1 at 2.) Plaintiff waived the right to a hearing and entered into a stipulated agreement. (*See id*.) As a part of that agreement, plaintiff agreed not to violate any conditions of community supervision, to attend a chemical dependency treatment evaluation scheduled for March 29, 2013 and follow all recommendations, and to report weekly to his supervising CCO and submit a UA for screening. (*Id*., Ex. 1, Attach. C.)

Plaintiff was transferred to the caseload of CCO Daniel Andemariam on April 3, 2013. On April 23, 2013, plaintiff reported to his CCO and submitted a UA which came back positive for cocaine. (*Id*., Ex. 1 at 3.) Plaintiff was given an opportunity to respond to this alleged

REPORT AND RECOMMENDATION - 2

violation of the conditions of his community custody and plaintiff denied using cocaine attributing the positive test to a flawed testing process. (Dkt. 9, Ex. 1 at 3.) Plaintiff claimed that it had been several weeks since he had last used cocaine. (*Id*.) CCO Andemariam apparently found plaintiff's response not credible and thereafter requested, and received, permission to arrest plaintiff. (*Id*.) Plaintiff was sanctioned to three days confinement under DOC's "swift and certain" program.

Plaintiff was released from confinement on Friday, April 26, 2013. (*Id*.) Pursuant to DOC policy, plaintiff was required to report to his CCO within one business day of his release. (*See id*.) Because plaintiff was released on a Friday, he was required to report on Monday, April 29, 2013, the first business day after his release. (*Id*.) CCO Andemariam retrieved a voicemail from plaintiff on April 30, 2013 in which plaintiff acknowledged that he had not reported within one business day of release as required and claiming that he intended to report by 4:00 p.m. on April 30, 2013.[1] (*See id*.)

CCO Andemariam returned plaintiff's call on April 30, 2013 and spoke with plaintiff directly. (*Id*.) Plaintiff again indicated during that conversation that he would try to report by 4:00 p.m. that day. (*Id*.) Plaintiff failed to report and CCO Andemariam thereafter requested a Secretary's warrant based on plaintiff's failure to report. (*Id*.) Plaintiff called CCO Andemariam on May 7, 2013 and CCO Andemariam told him he needed to report as soon as possible. (*Id*.)

---

[1] The parties disagree as to when plaintiff left the voicemail. CCO Andemariam contends plaintiff left the voicemail on April 29, 2013 and that he listened to it on April 30, 2013. Plaintiff contends that he did not leave the voicemail for CCO Andemariam until April 30, 2013. Plaintiff further contends that he told CCO Andemariam in his voicemail that he only found out after-the-fact that he was supposed to have reported on April 29, 2013. (*See* Dkt. 9, Ex. 1 at 3 and Dkt. 15, Ex. 1 at 3.)

REPORT AND RECOMMENDATION - 3

Plaintiff was apprehended by Community Corrections Specialist ("CCS") Jeff Sargent on May 8, 2013 and was taken into custody. (*Id.*)

On May 15, 2013, CCO Andemariam authored a violation report alleging that plaintiff had violated the conditions of his supervision by failing to report to his CCO within one business day of his release from custody on April 26, 2013, and by hiding from DOC officers and failing to abide by the verbal directives of CCS Sargent at the time of his arrest. (Dkt. 9, Ex. 1, Attach. D.) On the same date, plaintiff was served with a copy of a Community Custody Notice of Allegations, Hearing, Rights, and Waiver and with a copy of the violation report. (*See id.*, Ex. 1 at 4, Attach. D and Attach. E.)

Plaintiff's violation hearing took place on May 20, 2013 at the King County Jail before DOC Hearing Officer Robert Zarate. (*See id.*, Ex. 1 at 4 and Attach. F.) Plaintiff and the DOC both presented evidence at the hearing. (*See id*, Ex. 1, Attach. F.) Based on the evidence presented, plaintiff was found guilty of both violations and was sanctioned to nineteen days confinement with credit for time served since the date of his arrest. (*See id.*) Plaintiff was therefore scheduled for release on May 27, 2013. (*See id.*) Plaintiff appealed the hearing officer's decision and a DOC appeals panel affirmed the process and the decision on June 25, 2013. (*Id.*, Ex. 1, Attach. G.) Plaintiff presented his civil rights complaint to this Court for filing on July 2, 2013. (*See* Dkt. 1.)

## DISCUSSION

Plaintiff alleges that defendants violated his due process rights when they incarcerated him for 19 days based on a hearing at which no evidence of guilt was presented. Defendants argue in their motion for summary judgment that plaintiff's claims are barred by *Heck v. Humphrey*. (Dkt. 9 at 7-8.) Defendants further argue that they are entitled to absolute immunity

REPORT AND RECOMMENDATION - 4

from suit or, in the alternative, that they are entitled to qualified immunity because plaintiff has failed to show a violation of his constitutional rights. (Dkt. 9 at 8-12.) Plaintiff argues in his cross-motion for summary judgment that the *Heck* bar does not apply in the circumstances of this case, that defendants are not entitled to absolute immunity, and that the record does, in fact, establish that his constitutional right to due process was violated because there was no evidence to support the guilty finding at his DOC violation hearing. (*See* Dkt. 15.)

## Motion for Summary Judgment

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine dispute as to any material fact" such that "the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are facts which might affect the outcome of the pending action under governing law. *See Anderson*, 477 U.S. at 248. Genuine disputes are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on a motion for summary judgment, the court is required to draw all inferences in a light most favorable to the nonmoving party. *Id*. at 248. The court may not weigh the evidence or make credibility determinations. *Id*.

REPORT AND RECOMMENDATION - 5

## *Heck v. Humphrey*

Defendants first argue that plaintiff's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the United States Supreme Court held that a § 1983 claim which calls into question the lawfulness of a prisoner's conviction or confinement does not accrue "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489. The Supreme Court subsequently held that the rule announced in *Heck* applied to a state prisoner seeking damages for the alleged unconstitutional deprivation of good-time credits so long as the alleged constitutional violation would, if established, imply the invalidity of the prison disciplinary decision which resulted in the deprivation of good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).

Defendants maintain that because plaintiff challenges the sufficiency of the evidence relied upon to find him guilty of violating the conditions of his community custody, a ruling in plaintiff's favor in this action would necessarily imply the invalidity of the hearing officer's guilty finding and the resulting sanction. And, given that plaintiff has provided no evidence that the disciplinary decision has been invalidated, defendants contend that plaintiff's claims fall under *Heck* and are therefore barred in this proceeding.

Plaintiff argues that the *Heck* bar does not apply to his claims and he relies upon the Ninth Circuit's decision in *Nonnette v. Small*, 316 F.3d 872 (9th Cir. 2002) to support his position. In *Nonnette*, the Ninth Circuit held that *Heck's* favorable termination requirement could not be imposed against a § 1983 plaintiff who was ineligible to seek habeas relief because it would leave the plaintiff without any access to federal court to seek redress for alleged violations of his constitutional rights. *See Nonnette v. Small*, 316 F.3d 872, 876 (9th Cir. 2002).

The plaintiff in *Nonnette* brought a civil rights action pursuant to 42 U.S.C. § 1983

REPORT AND RECOMMENDATION - 6

alleging that California prison officials had violated his constitutional rights by revoking good-time credits and imposing administrative segregation in a prison disciplinary proceeding without supporting evidence. *Nonnette*, 316 F.3d at 874. The district court dismissed Nonnette's claims under *Heck*, concluding that his civil rights claims necessarily challenged the validity of disciplinary decisions which caused his continued confinement. The Ninth Circuit reversed, holding that Nonnette could maintain his civil rights action without first obtaining a writ of habeas corpus since any petition for habeas relief would have been dismissed for lack of case or controversy given that Nonnette had already fully served the period of incarceration that resulted from the revocation of good-time credits and had been released from prison. *Id*. at 876-77.

Defendants acknowledge *Nonnette* but argue that it conflicts with *Heck* and therefore should not be followed. However, plaintiff's situation here is substantially similar to that of the plaintiff in *Nonnette* and this Court is bound by the Ninth Circuit's decision in that case. Accordingly, this Court concludes that *Heck* does not bar this action.

## Absolute Immunity

Defendants next argue that they are entitled to absolute immunity in this action. The United States Supreme Court has held that, in light of common law immunity principles, persons who perform official functions in the judicial process are absolutely immune from liability for damages under 42 U.S.C. § 1983. *Briscoe v. LaHue*, 460 U.S. 325, 334-36 (1983). It is well established, for example, that state judicial officers are immune from liability for damages under § 1983 for acts taken within their judicial jurisdiction. *Pierson v. Ray*, 386 U.S. 547, 554-555 (1967). Prosecutors, likewise, have specifically been accorded absolute immunity from § 1983 claims for acts done within the scope of their prosecutorial duties. *Imbler v. Pachtman*, 424 U.S. 409 (1976).

REPORT AND RECOMMENDATION - 7

The Supreme Court has made clear that courts making determinations on claims of absolute immunity are to consider the functions performed by the officials asserting immunity. *See Burns v. Reed*, 500 U.S. 478, 486 (1991). An official seeking absolute immunity bears the burden of establishing the justification for such immunity. *Id*.

Defendants assert that Mr. Zarate, the hearing officer, was performing a quasi-judicial function in presiding over plaintiff's community custody hearing because he was deciding whether or not to revoke plaintiff's community custody, and that he is therefore entitled to absolute immunity. Defendants further assert that CCO Andemariam was performing functions akin to that of a prosecutor in initiating the violation process and filing the violation report and that he is therefore entitled to absolute immunity as well.

The Ninth Circuit has held that members of state parole boards are entitled to absolute immunity when they perform "quasi-judicial" functions. *Swift v. California*, 384 F.3d 1184, 1189 (2004). Absolute immunity has been extended to parole board officials "for decisions 'to grant, deny, or revoke parole' because the tasks are 'functionally comparable' to tasks performed by judges." *Id*. (citations omitted). "Absolute immunity has also been extended to parole officials for the 'imposition of parole conditions' and the 'execution of parole revocation procedures,' tasks integrally related to an official's decision to grant or revoke parole." *Id*. (citation omitted). The Ninth Circuit made clear in *Swift*, however, that immunity for the conduct of parole officials arising out of their duty to supervise parolees is qualified. *Id*.

Plaintiff argues in his response to defendants' motion for summary judgment and his own cross-motion for summary judgment that defendants have not carried their burden of demonstrating that absolute immunity applies. With respect to Hearing Officer Zarate, plaintiff argues that Mr. Zarate is not entitled to absolute immunity because he was not deciding whether

REPORT AND RECOMMENDATION - 8

to grant, deny or revoke plaintiff's parole, those functions which the Ninth Circuit determined in *Swift* were entitled to absolute immunity. Plaintiff points out that under DOC policy, department staff who are involved in community custody hearings must decide whether to impose a sanction and what that sanction will be, but are limited to sanctions of 30-days confinement.

With respect to CCO Andemariam, plaintiff argues that Mr. Andemariam is not entitled to absolute immunity because he did not act in a "prosecutorial" fashion when he investigated, requested a warrant, and initiated violation proceedings. Plaintiff maintains that this is exactly the type of conduct which the Ninth Circuit rejected in *Swift* as being entitled to absolute immunity.

Defendants, in their response to plaintiff's cross-motion for summary judgment, do not address any of plaintiff arguments concerning absolute immunity. The question of immunity, particularly with respect to Mr. Zarate, appears to be a close one. However, as defendants bear the burden of establishing their entitlement to absolute immunity, and as they have elected not to respond in any fashion to plaintiff's cogent arguments in opposition to their assertion of immunity, this Court concludes that defendants have not met their burden of demonstrating they are entitled to absolute immunity for the conduct at issue in this case.

### Due Process

Defendants next argue that even if they are not protected by absolute immunity, they are entitled to qualified immunity because plaintiff has not demonstrated any violation of his due process rights. Because the Court concurs that plaintiff has not demonstrated any violation of his due process rights, the Court need not conduct a qualified immunity analysis, the Court need only conduct an analysis of the due process claim itself.

An individual in community custody must be afforded certain procedural protections

REPORT AND RECOMMENDATION - 9

before his or her community custody may be revoked. *See Morrissey v. Brewer*, 408 U.S. 471 (1972); *In re McNeal*, 994 P.2d 890, 896-98 (Wash. Ct. App. 2000). The procedural requirements identified in *Morrissey* are: (1) written notice of the claimed violations; (2) disclosure of the evidence against him; (3) the opportunity to be heard and to present evidence; (4) the right to confront and cross-examine witnesses, unless good cause is shown for not allowing confrontation; (5) a neutral and detached hearing body; and (6) a written statement by the factfinders describing the evidence relied on and the reasons for revoking parole. *See Morrissey*, 408 U.S. at 489.

Plaintiff does not argue that defendants failed to provide the required procedural protections. Plaintiff argues instead that one of the two violations he was found to have committed was not supported by any evidence. Specifically, plaintiff argues that his due process rights were violated when he was found guilty of failing to report to his CCO on April 29, 2013, and sanctioned to 19 days confinement, despite a lack of any evidence that he received notice of the required reporting date.[2] (Dkt. 5 at 2.)

A decision rendered in the context of a community custody proceeding violates due process if it is "either totally lacking in evidentiary support or [is] so irrational as to be fundamentally unfair." *See Duckett v. Quick*, 282 F.3d 844, 847 (D.C. Cir. 2002) (citing *Douglas v. Buder*, 412 U.S. 430, 432 (1973) and *Bearden v. Georgia*, 461 U.S. 660, 672 (1983)). The Washington courts have made clear that credibility determinations in community custody proceedings are for the trier of fact and are not subject to review. *See In re Price*, 157 Wn. App. 889, 907 (2010) (citing *State v. Mines*, 163 Wn.2d 387, 391 (2008)).

---

[2] Plaintiff's complaint identifies the relevant reporting date as April 26, 2013. However, the remainder of the record makes clear that the date in question is actually April 29, 2013.

REPORT AND RECOMMENDATION - 10

The DOC violation report authored by CCO Andemariam alleged in support of the claim that plaintiff failed to timely report within one business day of his release from custody that plaintiff was released from the King County Jail on April 26, 2013, and that, per the release order, plaintiff was to report to his CCO within one business day of release, or April 29, 2013. (Dkt. 9, Ex. 1, Attach. D.) The report further alleged that plaintiff did not report to CCO Andemariam, or to anyone within the DOC, within the required one business day or anytime thereafter. (*Id*.) Plaintiff argues that he was never provided notice by CCO Andemariam of the one business day reporting requirement and that there was no evidence presented at the hearing establishing that he knew he was supposed to report on April 29, 2013.

A review of the transcript of plaintiff's violation hearing, and the list of documents the DOC intended to and/or did present at the hearing, suggests that the DOC never produced the release order referenced by CCO Andemariam in his violation report which purportedly instructed plaintiff that he was to report in person to the DOC within one business day of his release.

However, the CCO who presented the DOC's case at the hearing offered evidence that CCO Andemariam received a voicemail from plaintiff on April 30, 2013 in which plaintiff acknowledged that he had failed to meet his obligation to report within one business day of his release from custody and would come in that day, April 30, instead. (Dkt. 9, Ex. 2 at 8.) CCO Andemariam's notes of the voicemail reflect his impression that plaintiff "had a flippant attitude about the matter." (*See id*. and Dkt. 15, Attach B.)

There was further evidence presented at the hearing that CCO Andemariam called plaintiff back on April 30, 2013 and spoke with him about not having reported the previous day and that plaintiff claimed he intended to report by 4:00 p.m. (*See id*.) CCO Andemariam's notes

REPORT AND RECOMMENDATION - 11

of that call also indicate that plaintiff was very evasive and wanted to know if a warrant had been issued for his arrest. (*See id.*)

Plaintiff testified at the hearing that he never received any paperwork advising him that he needed to report in person within one business day of being released from custody on a "swift and certain violation." (Dkt. 9, Ex. 2 at 12-13, 16.) Plaintiff also denied acknowledging to CCO Andemariam during their telephone conversation on April 30, 2013 that he knew he should have reported the previous day. (*Id.*, Ex. 2 at 14.) According to plaintiff, he told CCO Andemariam he was calling to find out when he was supposed to report and he learned from CCO Andemariam at that time that he was already late. (*Id.*, Ex. 2 at 15.)

The transcript of the hearing reveals that Hearing Officer Zarate spent considerable time discussing with plaintiff the evidence indicating that plaintiff apparently did know about the requirement that he report on April 29, 2013, and querying plaintiff on his understanding of his reporting requirements. Late in the hearing, when Mr. Zarate was reviewing with plaintiff the reporting requirements, plaintiff admitted calling CCO Andemariam on April 29, 2013, though he denies it now. (*Id.*, Ex. 2 at 60.) At the conclusion of the evidence, Mr. Zarate found plaintiff guilty of failing to report following his release from custody. (*Id.*, Ex. 2 at 63.)

Plaintiff fails to make the showing necessary to demonstrate that the community custody decision violated due process. Hearing Officer Zarate was entitled to make a credibility determination that CCO Andemariam's report that plaintiff had acknowledged missing his reporting date was credible and plaintiff's testimony that he did not know the reporting date was not credible.

Moreover, plaintiff admitted at the hearing that he had, in fact, called and left a voicemail for CCO Andemariam on April 29, 2013, and then actually spoke to him on April 30, 2013. This

REPORT AND RECOMMENDATION - 12

is consistent with CCO Andemariam's report that plaintiff knew he was to report on April 29, 2013 and inconsistent with plaintiff's other testimony at the hearing that he was unclear about when he was to report and that that was the reason he contacted CCO Andemariam by telephone on April 30, 2013 and learned, only after speaking to CCO Andemariam, that he was a day late in reporting.

Finally, it is noteworthy that while plaintiff acknowledged at the hearing that Mr. Andemariam told him to report during their conversation on April 30, 2013, plaintiff did not report that day and, in fact, did not report at all before being arrested on May 8, 2013. This is a factor which Hearing Officer Zarate could have reasonably taken into consideration in determining plaintiff's credibility.

In sum, there was sufficient evidence presented at the hearing for Hearing Officer Zarate to find plaintiff guilty of failing to timely report upon his release from custody, and plaintiff makes no showing that the decision was so irrational as to be fundamentally unfair. Plaintiff therefore fails to establish any due process violation and, thus, defendants are entitled to summary judgment in this § 1983 action.

## CONCLUSION

Based upon the foregoing, this Court recommends that defendants' motion for summary judgment be **GRANTED**, that plaintiff's cross-motion for summary judgment be **DENIED**, and that plaintiff's complaint and this action be **DISMISSED** with prejudice. A proposed order accompanies this Report and Recommendation.

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

REPORT AND RECOMMENDATION - 13

Objections, however, may be filed and served upon all parties no later than **January 23, 2014.** The Clerk should note the matter for **January 24, 2014**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed eight (8) pages. The failure to timely object may affect the right to appeal.

DATED this 9th day of January, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14